## SUPREME COURT.

### BELL agt. MALI, JEWETT and STACY.

### GAILLARD agt. THE SAME.

Where the plaintiff, in his complaint, alleged that under the false representations of the defendants, that only the legitimate number of shares of stock of the company had been issued, he bought stock of the company at a certain time, but omitted to show or allege that *at that time* the stock had been over-issued, and showed that the over-issue was after he bought,

*Held,* that the complaint was fatally defective in showing title, or right to bring

the action. It was material to the plaintiff's case, so far as he relied on a false representation, to show directly that the representation was untrue when made.

The complaint also stated, that the genuine stock could not be distinguished from the false, and that thereby the plaintiff sustained a loss.

*Held*, that if the false stock was valueless, the loss could not result, or if it could the plaintiff should show how. And if the over-issued stock was valid, and bound the company, then the injury was primarily to the company, and only indirectly to the plaintiff; and the company should sue, or be made a party defendant, and the plaintiff sue for himself and all other stockholders. (*See Wells* agt. *Jewett, ante page* 242.)

The false representation, with proper averments, would give a cause of action to the plaintiff alone; the mere over-issue would give a cause of action to the company; or the plaintiff and all the other stockholders. But the two matters could not be joined in one complaint.

To justify an *arrest*, it must appear to the judge by affidavit, "that a sufficient cause of action exists." (*Code*, § 181.) The omission to state in the complaint in this case so material a part of the cause of action, held to be a failure to comply with the requirements of the Code.

On an application for an order of arrest, or to sustain such an order, the material statements in the affidavits, if on *information* and *belief* merely, should show how the information was derived, and why the person communicating it did not make the affidavit.

The *stock* of all companies about to be engaged in mining operations must have only a fancy value. The market value, therefore, must be assumed to be the real value, when no more certain test is shown.

*New-York Special Term, June,* 1855.

MOTION to discharge defendants from arrest, or to reduce their bail.

—— ———— *for defendants.*
—— ———— *for plaintiffs.*

MITCHELL, Justice. The complaint in the first of these cases somewhat resembles that in *Wells* agt. *Jewett,* (*ante page* 242,) but differs in three respects. There is apparently but one count intended ; the plaintiff alleges that he is the holder of genuine stock, and does not set forth the sale of the lands or ships of the company, and so omits the first two counts contained in that case. The allegations of fraud are much more distinct, and are direct against all three of these defendants.

It, however, shows a fatal defect of title, or of right to bring this action. It alleges that all the plaintiff's stock was bought in 1853, except a small part bought in the early part of 1854; and that it was bought under representations of the defendants, that only the legitimate number of shares of stock had been issued, but omits to show that, *at that time*, any more had been issued: and it shows that the over-issues were after that time— stating that it was while the defendants were directors, and *previous to the first day of June*, 1854. This seems to *imply* that the over-issue was about that time; and it was material to the plaintiff's case, so far as he relied on false representation, to show directly that the representation was untrue when made: he cannot show that the defendants represented that there was no over-issue when he bought, and then show, as proof of the falsity of that representation, that they afterwards made the over-issue.

The complaint proceeds to state that the genuine stock could not be distinguished from the false, and that thereby the plaintiff sustained a loss. If the false is valueless, this loss could not result, or if it could, the plaintiff should show how it does result. If the over-issued stock is valid, and binds the company, then the injury is primarily to the company, and only indirectly to the plaintiff, and the company should sue, or if the company will not sue, it should be made a defendant, and the plaintiff sue for himself and all other stockholders. (*See opinion in Wells* agt. *Jewett, ante page* 242.)

The complaint in *Gaillard* agt. *Mali* has the same defects as in that of *Bell*.

The false representation, with proper averments, would give a cause of action to the plaintiff alone,—the mere over-issue would give a cause of action to the company or to the plaintiff, and all the other stockholders,—so the two matters should not be joined in one complaint.

The plaintiff alleges in *Bell* agt. *Mali*, &c., and shows that his purchases of stock were made in 1853, except one purchase on Feb. 3d, 1854. The over-issues, he alleges, were between June 1853, and June 1854: so they *may* all have been since

Feb. 3d, 1854, and then the plaintiff would have no cause of action for the false representation, as it could not have induced him to buy.

To justify an arrest, it must appear to the judge, by affidavit, 1st, " That a sufficient cause of action exists." (*Code*, § 181.) The omission to state so material a part of the cause of action, is a failure to comply with this requirement.

The plaintiff's affidavits show a connection between Stacy and Mali as to the over-issue of the stock, but not as to any authority from Mali to Stacy to make misrepresentations as to the over-issues: they show no representations made by Mali himself: he promised to render a statement, and did not make it; but that was not a representation of an existing fact.

In July, 1853, Stacy was asked, if all the stock was issued, and if more would be issued: he answered, that the 30,000 were issued, but that, by their charter, the company had power to issue 10,000 shares more, but that no more would be issued. The statement as to the power given by the charter may have been an error as to the law, and on a question on which the plaintiff could judge for himself by reference to the charter. The promise was no representation. He was asked why the stock was going down, and attributed it to speculation by brokers.

It does not appear that, at *this time*, the over-issue was begun. He made similar answers to similar inquiries in January, 1854. It may be that the over-issue had then taken place, and as he began to answer, and professed to give an account of the cause of the fall of the stock, he was liable if he concealed other, or the true causes of the fall, with the intent to deceive and defraud the dealers in the stock. (*See Addington* agt. *Allen*, *quoted in Wells* agt. *Jewett, ante page* 242.) But the time of the over-issue is material, and Mali should be shown to have authorized the statements made. It might be consistent with the plaintiff's statements, that Mali relied on a supposed right in the company to issue to a larger extent; or according to his own, that he knew nothing of them. No application was made to Jewett for information.

In relation to the amount of the bail to be given, it should be shown what the plaintiff paid for the stock bought after the alleged false representation was made to him; that would have some influence on the amount of bail, and even on the amount of the recovery. If the lawful issue could be only of 30,000 shares of $100 each, and the over-issues were 28,000 shares, then each share, if there had been no over-issue, would sell for $100, but by the over-issue would sell for about $70; so the plaintiff might expect it would rise to 3-7 more than the market price, and be induced to buy accordingly. All that he lost, or failed to gain, by the misrepresentation, would be 3-7 of the market price; the rest of the fall was from depreciation from other causes. If (as Mali states his belief) the plaintiff bought when the stock was selling for ten per cent. of its par value or less, the plaintiff's loss on 450 shares, so far as it was occasioned by the false statements as to over-issues, could not have exceeded 3-7 of $4,500, (the purchase money,) or less than $2,000, and the bail, if required, should be reduced accordingly.

In the defendants' affidavits, Jewett shows that he overdrew his stock account, and seems to suppose he had an excuse for it, because the company owed him money, and he held the stock as collateral. This would avail him but little, if the other grounds of the action were well sustained. He, however, denies all false representation. Mali also denies all false representation or intention to deceive, and states that he left the certificates of stock, in blank, with the secretary, and that this was usual in this city, and that he did not know of the over-issues, and has received none of the avails of that transaction.

As the defendants' affidavits are received on motions of this kind, and the plaintiff does not state any representation which Mali made, that could be a cause of arrest, and does not state any made by Jewett, the weight of the evidence is in favor of these two defendants.

It would be different with Jewett, as he received so much of the stock and its avails, if it could be inferred that Stacy was acting with or for him: that may be inferred as matter of fact,

as Stacy would hardly overdraw, or allow Jewett to overdraw, so largely, if there were not a concert and conspiracy between them.

Another objection to many of the statements in the plaintiff's affidavits is, that they are on information and belief only, and how the information was derived, and why the person communicating it did not make the affidavit, and what he said, is not stated.

Gaillard's affidavit charges misrepresentations in general terms, which can be of no avail on such a motion. It, however, proceeds to particularize representations made by Mali, and by Stacy; that Mali said the stock had fallen so much on account of stock-jobbing operations; and being asked what it would be worth if the company should be forced into liquidation, said he *could not tell*, but he had no doubt the stockholders would even then realize 30 per cent.; and when the stock had declined to 12 or 13 per cent., Mali assured the plaintiff, who was inquiring for a friend, that the stock was good, and advised him not to sell at such a sacrifice. The statements of Stacy are very like those in Bell's affidavit.

The affidavits of Mali and Jewett, in this case, are similar to theirs in Bell's.

There is the same objection to the plaintiff's affidavit in this case, that it is mostly on information and belief; that it does not show that Mali did not believe his statements to be correct, or that at the time spoken of they were not correct; and if another allegation of the plaintiff be true, that the stock was worth par but for the over-issues, then the over-issues being to such an amount as reduced the value of the stock only about 3-10, his statements were true, and the stock was worth over 30 per cent. to the stockholders, and it would have been a sacrifice to sell it at 13 per cent.

It may be natural to those who suffer by these wrongs of certain individuals, to attribute the whole loss on their speculations to those wrongs; but it is the business of courts to scrutinize the facts, and endeavor to discover how far the loss is attributable to that cause. The stock of all companies about

to be engaged in mining operations must have only a fancy value, and their real value cannot be ascertained until the experience of several years at least after they have been in actual operation, and bringing their produce to market. The market value must be assumed to be the real value, when no more certain test is shown, and that in this case was only 30 per cent, at the highest time alluded to. The plaintiff's loss by any representation should be estimated on such a valuation.

As the complaints in both actions are defective, and the affidavits imperfect, both Jewett and Mali should be discharged from the arrest, with $10 costs of motion in each case, unless the plaintiffs in each case elects in five days to pay those costs and to amend his complaint so as to conform to the views here stated, and to put in affidavits supplying the defects here pointed out, and then serves his new affidavits and amended complaint in fifteen days thereafter. The defendants to have the right to answer such new affidavits, and to renew the motion for their discharge without serving any papers not already served.